## Hallar *v.* Milstone, Appellant.

390

Argued January 6, 1959. Before JONES, C. J., MUS-
MANNO, JONES, COHEN and MCBRIDE, JJ.

*Leon I. Mesirov,* with him *William D. Valente* and
*Mesirov and Leonards,* for appellants.

*Henry W. Maxmin,* with him *Jacoby & Maxmin,* for
appellee.

OPINION BY MR. JUSTICE COHEN, April 20, 1959:

On January 3, 1951, an agreement was entered into
whereby Charles W. Hallar agreed to sell the outstand-
ing capital stock of a corporation, holding an automobile
and truck franchise, to the appellants, Milstone and
Rosenfeld.

The agreement stated that the price of the stock was to be $115,000 and further provided as follows:

"2. The purchase price of One Hundred Fifteen Thousand Dollars ($115,000.00) is based upon the Balance Sheet of CORPORATION at the close of business on October 31, 1950 . . . and shall be adjusted to the Balance Sheet of CORPORATION at the close of business on December 31, 1950, which shall be prepared in accordance with sound accounting principles and as conforming to the following requirements:

"(a) Current and prepaid assets on said Balance Sheet shall be stated at the actual dollar value.

"(b) Inventories on said Balance Sheet shall be valued on the basis of a physical count thereof made in cooperation with the BUYERS and priced at cost.

"(c) A reserve shall be set up for the payment of all taxes due by CORPORATION by reason of its operation from May 1, 1950, to December 31, 1950, as follows: (1) As to Pennsylvania Capital Stock Tax, an amount equal to two-thirds (2/3) of five (5) mills applied to the sales price of the Capital Stock of CORPORATION. (2) As to Federal Income and Excess Profits Taxes, an amount equal to the tax which would be payable if CORPORATION changed its accounting period to end as of December 31, 1950, and reported for the short period expiring December 31, 1950, in conformity with the Internal Revenue Code applicable thereto. (3) As to Pennsylvania Corporate Income Tax, an amount equal to four percent (4%) of net income earned for the period from May 1, 1950, to December 31, 1950. (4) Any other taxes shall be adjusted equitably.

"(d) In said Balance Sheet fixed assets and reserves for their depreciation or amortization shall be at Book Value."

Simultaneously with the sale of the stock, the appellants, in their individual capacity, executed an agree-

ment for the purchase of the premises wherein the corporation conducted its business. The corporation occupied these premises under a lease agreement which required rental payments, in addition to fixed monthly payments, of one-half of its profits. The corporation continued its tenancy under the existing lease.

The accountants, representing both the buyer and the seller, prepared the December 31 balance sheet. They established a reserve for the payment of all taxes which they called "Estimated Taxes on Current Income." This reduced the net worth of the corporation by that established amount. However, the December 31 balance sheet was prepared without listing the accrued profit-sharing rental which had become due the landlord on the profits which had been earned by the corporation during the eight months of its then current fiscal year either as a liability which would have reduced the net worth of the corporation, or as a deduction against income which would have reduced the amount designated as the "reserve" for income taxes.

On January 26, 1951, the parties, their attorneys and accountants met and settled the transaction. The net price which was agreed upon was paid by the appellants to Hallar and he executed and delivered to them his receipted invoice for the stock at that price. At settlement Hallar likewise established an escrow fund called for by the agreement whereby he paid $6,150 to the escrow agents to be applied against certain listed items, which by the agreement survived the settlement.

At the end of the corporation's fiscal year on April 30, 1951, appellants caused to be accrued on the corporation's books, and subsequently paid to themselves individually as landlords, $29,280.98 which was the profit-sharing rent required by the lease for that year. The accrual of this rent and its deduction as a corporate expense in determining its net taxable income re-

sulted in a reduction of its income and excess profits tax liability for its fiscal year. The tax actually paid was approximately $12,000 less than the provided reserve which appeared on the December 31 balance sheet as "Estimated Taxes on Current Income."

Ethel M. J. Hallar, Executrix of the Estate of Charles W. Hallar, deceased, filed a complaint in assumpsit containing two counts. Her first count alleged that the decedent was entitled to the difference between the "Estimated Taxes on Current Income" (the reserve) and the actual tax liability which was paid by appellants at the close of the fiscal year. In her second count, she claims recovery out of the escrow fund which had been created at the settlement. (Appellants at argument withdrew their appeal as to the second count). The court below filed an adjudication, finding for the executrix on both counts and the appellants' exceptions to the adjudication were dismissed by the court en banc. This appeal followed.

Appellants have abandoned their appeal insofar as the second count of the appellee's complaint; therefore, the sole question before this court is whether or not the appellee is entitled to recover that part of the reserve which was not required for the payment of taxes appearing on the December 31 balance sheet as "Estimated Taxes on Current Income."

In deciding this question we must determine the effect and purpose of the reserve which was set up by agreement of the parties. Reference to the agreement clearly indicates that the only purpose of the reserve was to enable the parties to establish the worth of the corporation at the time of the settlement. Every buy and sell agreement that seeks to establish the value of a corporation recognizes that the activities of the corporation have generated a tax liability which usually does not appear upon the books of the corporation until

the termination of the fiscal year. Since it was necessary to determine the value of this corporation in the midst of the fiscal year; this tax liability had to be ascertained so that it could be taken as a deduction from the value of the corporation in order to discover the corporation's true worth. The parties agreed what accounting principles should be employed in making a determination of this deduction.

The lower court states that this reserve was an "estimated fund set aside for the payment of enumerated Federal and State taxes. . . ." The court is manifestly in error in this respect. It is readily apparent that at no time were any funds set aside or earmarked for the reserve. On the contrary, this reserve was a mere balance sheet figure arrived at for the purpose of determining, to the best of the ability of all parties involved, the net worth of the corporation on a particular day, i.e., December 31, 1950. The reserve never became a part of the corporation's financial statement. From the moment the assets were acquired by the purchasers, the reserve as such disappeared; its purpose of ascertaining the value of the stock having been accomplished.

The appellee contends that because the appellants paid to themselves the profit-sharing rental at the close of the fiscal year and thereby reduced the tax liability by approximately $12,000 below the amount provided for in the reserve the tax saving should be turned over to her. This contention cannot succeed. At the time of the sale of the corporate stock to the appellants the balance sheet did not reflect a liability for the accrued rent. It is manifest that had the rent which had accrued up to December 30 been listed as a liability, the net worth of the corporation would have been decreased by this amount, and the appellee would have received less for her stock even though the amount required as a reserve for taxes would have been smaller.

Both parties were represented by competent accountants, and both parties knew of the profit-sharing rental agreement, and they surely must have known that the failure to accrue the rent as a liability increased the amount of the reserve necessary for taxes. It would be grossly inequitable to say that now at the end of the fiscal year when the profit-sharing rental liability is paid, that the tax saving, which such payment occasioned, should be payable to the appellee.

Another factor which leads us to the same conclusion is that both parties knew how to set aside special or escrow monies earmarked for a special purpose. In fact, they resorted to the establishing of an escrow fund, which fund is now the basis of the appellee's second count. Had the parties intended that the reserve established for taxes should have the same characteristics as the escrow fund as the appellee now maintains, there is no reason why they would not have used the same clear and unambiguous language. The purchase price paid at the settlement was determined by the formula provided in the agreement. The only items that survived the settlement were those provided for in the agreement. Since the purpose of the reserve for taxes expired when the value of the corporation was determined, there can be no recovery by the appellee.

For the above reasons the judgment of the court below is reversed insofar as it pertains to count one of appellee's complaint and affirmed as to the second count.